# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-KA-00367-SCT

*JERRY PITTMAN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/24/2023 |
| TRIAL JUDGE: | HON. CALEB ELIAS MAY |
| TRIAL COURT ATTORNEYS: | MITCHELL DEE THOMAS |
| | CHRISTOPHER MORGAN POSEY |
| | STEVEN SIMEON KILGORE |
| | P. SHAWN HARRIS |
| COURT FROM WHICH APPEALED: | NESHOBA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | STEVEN SIMEON KILGORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/23/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KING, P.J., CHAMBERLIN AND ISHEE, JJ.**

**KING, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Jerry Pittman and Brianna Pierce broke into a trailer belonging to David Parker and stole several items.  At trial, testimony was admitted regarding Pittman's alleged theft of power tools in a separate incident.  Pittman was convicted of burglary of a dwelling, and he appeals, alleging that his trial was constitutionally infirm because evidence of a prior bad act

was improperly admitted. Because any error, if found, would clearly be harmless, this Court affirms Pittman's conviction.

## FACTS AND PROCEDURAL HISTORY

¶2. On the night of June 7-8, 2021, Jerry Pittman, with the help of Brianna Pierce, broke into a trailer belonging to David Parker and took a cash box with about $890, a laptop, two cameras, a taser, a harmonica, a zippo lighter, a men's watch, an LED light, and a bag, all belonging to Parker. Pierce and Pittman were both indicted for burglary of a dwelling. Pierce took a plea deal, while Pittman was tried.

¶3. Parker testified that he was living in a trailer next to his house while the house was being repaired. On the night of June 7, 2021, he went to the casino, and when he arrived back home, he realized that his trailer had been burglarized. He had locked the door when leaving, but upon returning, he noticed that the door opened without a key. He noticed several things missing, including his cash box, and he noticed that the trailer looked like it had been ransacked. Parker testified that Pierce was the only person besides him who knew where his cash box was located. He had met Pierce at the casino, they would hang out, they would go to his house, and he would give her money; he alleged that they had a sexual relationship. Deputy Jenkins with the Neshoba County Sheriff's Department was the responding officer to the burglary of Parker's trailer. He noticed that the trailer appeared to have been rummaged through and took the information regarding what was stolen. Deputy Jenkins testified that Parker told him that Pierce was the only person who knew where Parker kept his cash box.

¶4.    Pierce took a plea deal from the State, pleading guilty to burglary of a dwelling and possession of methamphetamine, and she agreed to give testimony in Pittman's case. Pierce testified that she knew Parker from Facebook and the casino. She stated that he would give her money at the casino. She further stated that he invited her to his trailer one time and wanted "more" but that she did not engage in sexual relations with him. She stated that Parker gave her money anyway but that she then decided to "get revenge" on Parker, ostensibly for this encounter. Pierce also knew Pittman from the casino and Facebook. She testified that she and Pittman would go to the casino together and also get high on methamphetamine.

¶5.    Pierce testified that, on the night of June 7, Parker had contacted her, so she knew that he was at the casino. She suggested to Pittman that they steal Parker's cash box. With Pittman driving, they drove by the casino to make sure that Parker's car was there, and then they went to Parker's trailer. At the trailer, Pittman went inside while Pierce remained in the vehicle. Pittman came back to the vehicle with Parker's items, including a cash box and a laptop. Pierce kept the money, and Pittman kept the items. Pierce testified that she never informed Pittman the items in the trailer were hers and that Pittman knew they were stealing.

¶6.    Investigator Burt with the Neshoba County Sheriff's Department testified regarding his investigation into the burglary. Without objection, Investigator Burt testified that Pittman was a suspect in another case and that upon investigating that case, Parker's items were found in Pittman's truck. As Investigator Burt began testifying in more detail about the other case Pittman was involved in, the defense objected. The trial court initially sustained the

3

objection, and the State then put on a proffer without the jury present regarding the testimony about the other case, arguing that it was admissible. The testimony was that Pittman stole power tools from a vehicle in the casino parking lot because Pierce told him the person owed her money, that this was caught on video, that the casino security detained Pittman and called law enforcement, and that upon investigating this crime, law enforcement located Parker's items. After the proffer, the trial court determined that the testimony was admissible to show absence of mistake under Mississippi Rule of Evidence 404(b), and it also noted that perhaps showing intent to steal would be applicable as well. The trial court noted that a limiting jury instruction would also be given regarding the testimony. With the jury present, Investigator Burt testified regarding additional details of the other case. The search of Pittman's truck, along with producing items belonging to Parker, also produced power tools that had been reported stolen in a separate incident for which Pittman was arrested on June 11, 2021. That was the extent of additional information regarding the other case that was elicited by the State during direct examination. With regard to Parker's items, they were found in two separate searches: the first search of the vehicle yielded Parker's LED light, harmonica, watch, taser, laptop, lighter, and bag. The second search yielded two cameras, which were located after Pittman indicated they were in the vehicle during an interview with Investigator Burt.

¶7. Pittman provided a written statement to Investigator Burt. In it, Pittman claimed that he was told that Pierce formerly occupied Parker's trailer and that she needed to get her stuff. He went in for a cash box and other items. Pierce kept the cash box and told Pittman to keep

4

anything else. Later, he found out that the trailer belonged to Parker and that he had been "used," but he kept the items in his possession.

¶8. Pittman testified on his own behalf. Pittman stated that he met Pierce at the casino, when he was a regular methamphetamine user. They were friends and hung out, but Pittman was pursuing a romantic relationship with Pierce. A few weeks before the burglary, Pierce mentioned something to Pittman about burglarizing Parker's camper, and Pittman, who claimed that he had recently won a casino jackpot and who had employment income, stated that he told her that he was not going to help her rob anyone. At another point, Pierce said something about getting her stuff. On June 7, 2021, she told Pittman that she would like to get her stuff out of the trailer and asked him for a ride. Pittman admitted that Pierce never told him that she lived in the trailer but that she had been there before and had stuff there. He drove for awhile, but when they got to the country roads, Pierce began driving because Pittman did not know where to go. When they arrived at the trailer, Pierce told Pittman that she had a laptop in a brown bag and a lock box above the bed that needed to be retrieved from the trailer. She told him to jiggle the door and it would pop open, so he did, going into the trailer by himself. He found a brown bag, but no computer was inside it. Pittman did state that he saw other items inside the bag that, according to him, were not on Pierce's list of belongings to recover. He testified that he went through the trailer to find the laptop, located it, and then grabbed the lock box and left. Pittman testified that he left with the laptop, the lock box, and the other items in the brown bag he found. When they parted, Pierce took the money and told Pittman to hang on to the stuff until she could get it from him.

5

¶9. On cross-examination, Pittman admitted that Pierce told him only to retrieve the lock box and the brown bag with a laptop. As to the other items in the brown bag, he stated that "I didn't know they weren't hers or if they were hers or what." He testified that he did not go through the bag, but he did distinctly see that two cameras were on top. Also on cross-examination, the State asked Pittman if Parker's property was commingled in his car with the stolen power tools. Pittman stated that the power tools were not stolen because he had purchased the power tools from someone at the casino whose name he did not know. Pittman claimed that he found out later that the power tools had been reported stolen.

¶10. The State then recalled Investigator Burt. Investigator Burt testified that Pittman admitted in his interview that he had stolen the power tools. Casino security saw video footage of Pittman stealing the power tools, and Pittman told him that when he was detained at the casino, he was actually trying to return the tools because he felt bad. On cross-examination, Pittman's attorney elicited that Pittman told Investigator Burt that he stole the tools because Pierce had told him that the owner owed her money, and he stole the tools in lieu of payment for the alleged debt.

¶11. At the close of trial, the trial court gave a limiting instruction regarding the evidence of other bad acts. The jury found Pittman guilty of burglary. The trial court sentenced Pittman to twenty years, with five years suspended, for a total of fifteen years to serve.

¶12. Pittman appeals, alleging that admitting evidence of other bad acts was error and that his trial was consequently constitutionally unfair. The gist of Pittman's argument at trial was

that, while he broke into Parker's trailer, he had no intent to steal because he believed that the items he took belonged to Pierce.

## ANALYSIS

¶13.    This Court reviews the admission of evidence for abuse of discretion. ***Ross v. State***, 954 So. 2d 968, 992 (Miss. 2007). Further, "[e]rrors in the admission of evidence are subject to a harmless-error analysis." ***Smith v. State***, 136 So. 3d 424, 435 (Miss. 2014) (citing ***Young v. State***, 99 So. 3d 159, 165 (Miss. 2012)).

> Harmless-error analysis prevents "setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial." ***Chapman v. California***, 386 U.S. 18, 22, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). We do not reverse a conviction for an erroneous evidentiary ruling unless "the error adversely affects a substantial right of a party," or in other words, unless the ruling prejudiced the accused. ***Young***, 99 So. 3d at 165 (internal quotations omitted). Thus, where it is "clear beyond a reasonable doubt that the error did not contribute to the verdict," we need not reverse the conviction. ***Id.*** (internal quotations and alterations omitted).

***Id.*** This Court need not analyze whether the admission of evidence of other bad acts was error in this case because even if it was, any alleged error would be harmless.

¶14.    Burglary of a dwelling requires breaking and entering a dwelling house with the intent to commit a crime therein. Miss. Code Ann. § 97-17-23(1) (Rev. 2020). The evidence against Pittman is overwhelming. By his own admission, he broke into a trailer that he knew did not belong to Pierce and that he knew he did not have permission to enter. By his own admission, he knowingly took items that Pierce did not enumerate as hers; indeed, he knowingly took items, specifically the cameras, in addition to the items he claims Pierce stated belonged to her. By his own admission, he and Pierce had previously spoken about

7

burglarizing such a dwelling. His own testimony provides sufficient grounds to affirm, but Pierce's testimony, Pittman's written confession, the stolen items being located in Pittman's vehicle several days later, and the officer's testimony provide further overwhelming evidence that Pittman committed burglary of a dwelling. Thus, any error claimed by Pittman in admitting evidence of the prior bad act, if any error even exists, is harmless beyond a reasonable doubt as it is clear that it did not contribute to the verdict. Consequently, this Court affirms Pittman's conviction.

## CONCLUSION

¶15.    This Court need not analyze whether admitting evidence of the prior bad act was an abuse of discretion on the trial court's part because any such error would clearly be harmless. Therefore, this Court affirms Pittman's conviction.

¶16.    **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**